UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANILO CONCEPCION,

              Petitioner,

    v.

WILLIAM P. BARR, *United States Attorney General*, KEVIN MCALLENAN, *Secretary of the Department of Homeland Security*, THOMAS FEELY, *Field Office Director for Detention Removal*, JEFFREY SEARLS, *Facility Director Buffalo Federal Detention Center* and MICHAEL BALL, *SDDO*,

              Respondents.
_____

**DECISION AND ORDER**

6:20-CV-06080 EAW

## INTRODUCTION

*Pro se* petitioner Danilo Concepcion ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). The Court issued a Decision and Order on January 21, 2021 (the "D&O"), finding that Petitioner was entitled to an individualized bond hearing at which the Government bore the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community. (Dkt. 11). Judgment granting the petition in part pursuant to the D&O was entered on January 22, 2021. (Dkt. 12). Presently before the Court is

Petitioner's motion to enforce the Judgment and for immediate release. (Dkt. 14). Petitioner's motion is denied for the reasons that follow.

## BACKGROUND

The factual background of this case is set forth in detail in the D&O, familiarity with which is assumed for purposes of this Decision and Order. The Court has summarized the key details below, and includes the relevant developments since the Court's issuance of the D&O.

On June 13, 2007, removal proceedings were commenced against Petitioner with the service of a Notice to Appear ("NTA"), charging him with violating the Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), for being convicted of a crime of moral turpitude, based on a 2005 grand larceny conviction. (Dkt. 3-1 at ¶ 8 (Declaration of Deportation Officer Sherry Hunter ("Hunter Decl.")); Dkt. 3-2 at 8). On April 3, 2013, an immigration judge ("IJ") granted Petitioner a waiver of inadmissibility as to his grand larceny conviction, pursuant to INA § 212(h), 8 U.S.C. § 1182(h). (Hunter Decl., at ¶ 9; Dkt. 3-3 at 3).

Thereafter, on January 23, 2019, Petitioner was encountered by Immigration and Customs Enforcement – Enforcement and Removal Operations at the Oneida County Jail, where he was serving his sentence for his conviction for promoting prison contraband. (Hunter Decl., at ¶ 10). His immigration status was verified, he was identified as a criminal alien subject to removal, and an immigration detainer was lodged against him at the jail. (*Id.*). On January 25, 2019, Petitioner was placed in immigration removal proceedings by an NTA served on April 30, 2019, charging him with being a native and citizen of the

- 2 -

Dominican Republic, subject to removal pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), a law relating to Narcotic Drug with Intent to Sell, and pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien convicted of a violation of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance other than a single offense involving possession for one's own use of 30 grams or less of marijuana. (*Id*. at ¶ 11; *see also* Dkt. 3-2 at 14).

Following his release from state criminal custody, Petitioner was placed in Department of Homeland Security ("DHS") custody on April 30, 2019. (Hunter Decl., at ¶ 12; *see also* Dkt. 3-2 at 1). DHS determined that Petitioner would remain in DHS custody pending a final determination of his case, and Petitioner requested that an IJ review the custody determination. (Hunter Decl., at ¶ 12; Dkt. 3-2 at 17). Petitioner appeared with counsel before the Immigration Court on July 1, 2019; however, the proceedings were adjourned until August 12, 2019, for attorney preparation. (Hunter Decl., at ¶ 13). On August 12, 2019, the proceedings were adjourned until August 26, 2019. (*Id*. at ¶ 14).

On August 22, 2019, DHS served Petitioner with Additional Charges of Admissibility/Deportability. (*Id*. at ¶ 15). The NTA withdrew the aggravated felony charge, as Petitioner had been convicted of Criminal Possession of a Controlled Substance in the Third Degree in violation of NYPL § 220.16(12), and not Criminal Possession of a Controlled Substance in the Third Degree with Intent to Sell, in violation of NYPL § 220.16(01). (*Id*.; Dkt. 3-2 at 18). Petitioner remained subject to removability pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). (Hunter Decl., at ¶ 15).

Petitioner appeared before the IJ on August 26, 2019; however, the proceedings were continued to September 9, 2019.  (*Id*. at ¶ 16).  Petitioner appeared for a master calendar hearing on September 9, 2019.  (*Id*. at ¶ 17).  He admitted to the factual allegations in the NTA and conceded removability.  (*Id*.).  The IJ scheduled the case for an individual merits hearing on December 13, 2019.  (*Id*.).  The IJ conducted the hearing on December 13, 2019.  (*Id*. at ¶ 18).  Plaintiff was represented by counsel and testified in support of his applications for relief from removal.  (*Id*.).  The IJ denied Petitioner's applications for relief and ordered him removed to the Dominican Republic.  (*Id*.).

Petitioner appealed the IJ's removal order on January 9, 2020.  (*Id*. at ¶ 19; *see also* Dkt. 3-3 at 36).  His appeal remains pending before the BIA.  (Hunter Decl., at ¶ 22).  Petitioner remains detained at the BFDF pending completion of his removal proceedings.  (*Id*. at ¶ 23).

Petitioner filed the petition in the instant matter on February 5, 2020 (Dkt. 1), and this Court granted the petition in part on January 21, 2021, finding that Petitioner was entitled to a bond hearing within 14 days pursuant to 8 U.S.C. § 1226(a) where the Government bore the burden of demonstrating by clear and convincing evidence that Petitioner is either a risk of flight or a danger to the community. (Dkt. 11).  The D&O also required the IJ to consider Petitioner's ability to pay and alternative conditions of release in setting bond.  (*Id*. at 17).  A Judgment was entered on January 22, 2021.  (Dkt. 12).

Petitioner's bond hearing was held on February 1, 2021, and continued to and completed on February 3, 2021, and the IJ reserved decision at the conclusion of the hearing. (Dkt. 16-2, Dkt. 16-3).  Petitioner was represented by counsel at the hearing.  On

February 5, 2021, the IJ issued a written decision, concluding that the Government established by clear and convincing evidence that Petitioner presents a danger to the community and substantial risk of flight.  (Dkt. 16-1 at 12).

Petitioner filed the instant motion to enforce on February 18, 2021.  (Dkt. 14).  On March 15, 2021, Respondents submitted their opposition (Dkt. 16), and Petitioner replied on March 22, 2021 (Dkt. 17).  On March 23, 2021, Respondents filed a notice of appeal of the portion of the D&O that granted the petition in part.  (Dkt. 18).

## DISCUSSION

Petitioner contends that he did not receive a constitutionally adequate bond hearing as required by the D&O and asks the Court to order that Respondents immediately release him.  (Dkt. 12 at 14).  The Court finds Respondents afforded Petitioner a constitutionally adequate bond hearing pursuant to the D&O for the reasons that follow.

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases.  *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).  District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231,

§ 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

Courts in this District, including this Court, have held that a district court has jurisdiction to determine whether an IJ followed a court order granting a bond hearing pursuant to the Fifth Amendment. *See Blandon v. Barr*, 434 F. Supp. 3d 30, 36 (W.D.N.Y. 2020) (holding that Court has jurisdiction to determine whether the IJ complied with the Court's decision and order at bond hearing); *Apollinaire v. Barr*, No. 19-CV-6285-FPG, 2019 WL 4023560, at *2 (W.D.N.Y. Aug. 27, 2019) ("[T]he statute presents no obstacle to review because the Court is not reviewing an immigration judge's discretionary judgment, but whether its order was followed[.]"); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235-36 (W.D.N.Y. 2019) ("[T]he Court is not reviewing a discretionary judgment of the IJ under § 1226, and it is not 'set[ting] aside any action or decision by the Attorney General under § 1226. Nor is this Court simply *reviewing*, as the government contends, how the IJ applied [the clear and convincing] burden to the facts before it and weighed the evidence. Instead, the Court is determining whether the order it issued on November 2, 2018, was followed—that is, whether [the petitioner] received the due process to which he was entitled." (alterations in original) (quotations, citation, and footnote omitted)).

In the instant matter, the D&O required the Government to bear the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or danger to the community justifying his continued detention without bond. (Dkt. 11 at 17). Therefore, the Court is limited on this motion to reviewing whether the burden of proof

was in fact on the Government at Petitioner's February 1, 2021, and February 3, 2021, bond hearing.  This limitation means that the Court cannot review the substance of the IJ's decision regarding whether the government met its burden; however, whether the IJ failed to consider certain evidence without explanation is a procedural question that could be relevant to determining whether a clear and convincing evidence burden was actually applied at Petitioner's bond hearing.  The Court approaches Petitioner's present motion accordingly.  *See Apollinaire*, 2019 WL 4023560, at *3 ("[I]t is important to emphasize that the Court's task is narrow: it is to determine whether Respondent complied with the Decision and Order, not to review the hearing evidence *de novo*[.]"); *see also Gutierrez Cupido*, 2020 WL 103477, at *3 (same); *Hechavarria*, 358 F. Supp. 3d at 236 ("[T]he Court is determining whether the order it issued on November 2, 2018, was followed—that is, whether Hechavarria received the due process to which he was entitled."); *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017) ("In reviewing the government's compliance with the May 2, 2017 order, this Court is careful not to overstep its bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds.").  In addition, the Court notes that Respondents' pending appeal to the Second Circuit Court of Appeal does not divest the Court of jurisdiction over Petitioner's motion, and Respondents do not argue otherwise.  *See Enoh v. Sessions*, No. 16-CV-85(LJV), 2017 WL 2080278, at *4-5 (W.D.N.Y. May 15, 2017).

II. <u>Compliance with the D&O</u>

In the D&O, the Court ordered Respondents to provide Petitioner with a bond hearing where the Government bore the burden of proving by clear and convincing

evidence that Petitioner poses either a risk of flight or danger to the community justifying his continued detention without bond. (Dkt. 11 at 17). Accordingly, the Court must now determine whether during Petitioner's bond hearing the IJ "relied upon proof that could not possibly establish by clear and convincing evidence—as a matter of law—that [Petitioner] is a danger to the community" or a flight risk. *Nguti*, 2017 WL 5891328, at *2; *see Apollinaire*, 2019 WL 4023560, at *3 (same).

"[C]lear and convincing evidence . . . means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). "The clear-and-convincing burden of proof 'requires the government to prove that a factual contention is highly probable.'" *Apollinaire*, 2019 WL 4023560, at *3 (quoting *Hechavarria*, 358 F. Supp. 3d at 240); *see Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (discussing that clear and convincing evidence requires presenting evidence that shows "the truth of its factual contentions are 'highly probable'" (citation omitted)). Courts in this Circuit have found that the clear and convincing threshold is met when the IJ "review[s] the evidence, hear[s] arguments from both sides, and c[omes] to a legally permissible conclusion in light of the available evidence." *Medley v. Decker*, No. 18-CV-7361 (AJN), 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020) (quoting *Apollinaire*, 2019 WL 4023560, at *3).

The Court finds that on February 1, 2021, and February 3, 2021, Respondents provided Petitioner with a bond hearing where they bore the burden of proving by clear and convincing evidence that Petitioner was a danger to the community, flight risk, or both. In the bond hearing decision, the IJ found "that DHS has established by clear and

convincing evidence that [Petitioner] presents a danger to the community and substantial risk of flight if released from DHS custody." (Dkt. 16-1 at 12).

In considering danger to the community, the IJ discussed Petitioner's criminal history. (*Id.* at 6-8). The IJ also noted that Petitioner was evasive when questioned about his prior arrests, and that his explanations for his conduct were not credible. (*Id.* at 8). The IJ concluded that Petitioner's "conduct resulting in seven convictions, the most recent occurring in 2018, and while on parole, supports the finding that he continues to present a danger to the community." (*Id.* at 9). He continued, "DHS evidence demonstrates that [Petitioner] has repeatedly and consistently engaged in criminal activity, on average at least once every three to four years throughout his residence in the United States," and that "[s]tatistically, [Petitioner's] behavior makes it extremely likely that he will reoffend if released from custody on bond." (*Id.*). Without shifting the burden to Petitioner, the IJ considered the testimony and evidence submitted by Petitioner, including his pursuit of substance abuse treatment, but noted the lack of documentation demonstrating completion of such treatment. (*Id.*).

In considering risk of flight, the IJ considered Petitioner's likelihood of success on the merits of his removal case, his record of appearance in court, whether he would have a fixed address if released, and any immigration violations. (*Id.* at 10). The IJ noted that Petitioner's history of failing to appear before state criminal courts and issuance of multiple bench warrants "represents an ingrained pattern of criminal behavior and total disregard for authority," and supports a conclusion that he is a flight risk. (*Id.*). Evidence that Petitioner fraudulently obtained a green card and concession that he was inadmissible at

the time of his entry to the United States also weighed in favor of finding a risk of flight. (*Id.* at 10-11). The IJ considered Petitioner's letters of support and family ties, as well as his health condition, but found that those factors did not mitigate the substantial risk of flight that had been demonstrated by clear and convincing evidence. (*Id*. at 11).

Finally, the IJ considered ability to pay and alternatives to detention. (*Id.*). The IJ concluded that DHS met its burden by clear and convincing evidence that "no amount of bond would mitigate [Petitioner's] significant risk of flight." (*Id.*). He also concluded that Petitioner would not be a suitable candidate for other detention alternatives in light of all of the circumstances and risks presented. (*Id.* at 11-12).

Petitioner argues that the IJ should not have relied on his criminal history to demonstrate dangerousness and disputes the IJ's conclusions. But while the mere fact of a criminal conviction does not satisfy the clear and convincing evidence standard, the convictions and underlying circumstances may be considered by the IJ. *See Arana v. Barr*, No. 19-CIV-7924 PGG DCF, 2020 WL 2094098, at *9 (S.D.N.Y. May 1, 2020) (IJ permissibly found dangerousness by clear and convincing evidence based on 1996 DWI conviction and 2016 arson conviction where, with respect to the latter conviction, "Petitioner had – in an effort to kill himself – started a fire in his bedroom, and thereby placed other occupants of the residence in danger"). Further, the IJ did not solely rely on Petitioner's criminal history to support his conclusions, but cited other evidence and information he considered, and also provided an explanation for not giving certain evidence greater weight. *See Medley*, 2020 WL 1033344, at *3 ("While Mr. Medley 'may disagree with [his] resolution of the factual disputes,' . . . under these circumstances, the Court

cannot conclude that the evidence the Immigration Judge relied upon in reaching his conclusion could not possibly establish by clear and convincing evidence that Mr. Medley posed a danger to the community."); *Apollinaire*, 2019 WL 4023560, at *3 ("In short, this is not a case where an immigration judge failed to rely on record evidence in making a bond determination, or chose to rely on speculation." (citation omitted)). Petitioner has not identified any evidence overlooked by the IJ. Finally, the IJ complied sufficiently with the directives in the D&O to consider ability to pay and alternatives to detention, and explained his reasoning for concluding that they were not viable under the circumstances.

In short, while Petitioner may disagree with the IJ's resolution of the factual disputes, there was sufficient evidence for the IJ to determine by clear and convincing evidence that Respondents demonstrated that Petitioner is a danger to the community, flight risk, or both.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to enforce (Dkt. 14) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 6, 2021
      Rochester, New York